IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANNE A. SEARS, | ) |
| | ) |
|     Plaintiff, | ) |
| | )   NO. 3:19-cv-00807 |
| v. | ) |
| | )   JUDGE RICHARDSON |
| IAN S. SEARS, et al., | ) |
| | ) |
|     Defendants. | ) |

**ORDER AND MEMORANDUM OPINION**

Anne A. Sears, a *pro se* Tennessee resident, filed this civil suit under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962. (Doc. No. 1.) Plaintiff also filed an application to proceed in this Court without prepaying fees and costs (Doc. No. 2), a motion for expedited review and temporary restraining order (Doc. No. 8), and a motion for leave to use the Court's electronic filing system (Doc. No. 10). For the following reasons, Plaintiff's application to proceed as a pauper will be granted, this case will be dismissed, and Plaintiff's pending motions will be denied.

**I.    Application to Proceed as a Pauper**

The Court may authorize a person to file a civil suit without paying the $400.00 filing fee. 28 U.S.C. § 1915(a). Here, Plaintiff reports a monthly income that more than covers the filing fee (Doc. No. 2 at 1–2), but also reports monthly expenses that significantly outweigh this income (*id.* at 1–2, 4–5). The Court finds that Plaintiff does not have sufficient financial resources to pay the $400.00 filing fee, and will grant her application to proceed as a pauper.

## II. Initial Review

The Court must dismiss any case filed *in forma pauperis* if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). The Court must also construe a *pro se* complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

### A. Factual Background

Plaintiff alleges that she resided with and cared for her mother Sally Sears for many years at a property located at 1019 Boxwood Drive, Franklin, Tennessee ("the Boxwood Property"). (Doc. No. 1 at 10–11.) According to the Complaint, Plaintiff's mother died on July 2, 2016 at the age of 88. (*Id.* at 21, 28.)

Plaintiff has now filed a 70-page Complaint (Doc. No. 1 at 14–66) naming approximately 99 Defendants[1] (*id.* at 1–9). In a section of the Complaint titled "Theory of the Case," Plaintiff alleges that her brother, Defendant Ian Sears,[2] "coordinated and is coordinating through a network of organizations and people an ongoing RICO enterprise to bring about an early inheritance through the murder of [their] mother." (*Id.* at 11.) According to Plaintiff, Ian's goal was and is to "obtain the exclusive right to [their mother's] real and personal property" by

---

[1] This number is approximate because Plaintiff names 90 Defendants in the caption of the Complaint (Doc. No. 1 at 1–3), but the following list of parties includes an additional 6 individual and 2 organizational Defendants (*id.* at 5 (listing members of the bar associations of Williamson County and the state of Tennessee); *id.* at 6 (listing the Frist Clinic and Radiology Alliance)), and Plaintiff refers to 1 more person as a Defendant in the body of the Complaint despite not previously identifying her (*id.* at 38 (Julie Moss)).

[2] For clarity, the Court may refer to this Defendant as "Ian."

depriving Plaintiff of "her inheritance, fairly earned compensation in the care of [their] mother, and home at 1019 Boxwood Drive." (*Id.*)

Plaintiff requests monetary damages and injunctive relief. (*Id.* at 67–69.) As to the latter, Plaintiff specifically requests that this Court enjoin several state court orders and judgments issued during litigation over her deceased mother's estate. (*Id.* at 67–68.) The Court will first provide a summary of this state court litigation, relying on publicly available opinions of the Tennessee Court of Appeals,[3] before turning to the allegations in the Complaint.

### 1. State Court Proceedings

Lucas Bottorff, a named Defendant in this case (Doc. No. 1 at 1), filed suit in his capacity as the Administrator of Plaintiff's mother's estate against Plaintiff in both the Chancery Court and General Sessions Court of Williamson County. *See Bottorff v. Sears*, No. M2017-01363-COA-R3-CV, 2018 WL 3574745, at *1 (Tenn. Ct. App. July 25, 2018) ("*Sears I*"); *Bottorff v. Sears*, No. M2018-01232-COA-R3-CV, 2019 WL 2234680, at *1 (Tenn. Ct. App. May 23, 2019) ("*Sears II*").

#### a. Williamson County Chancery Court

In December 2016, Bottorff "filed suit against [Plaintiff] in the chancery court for Williamson County . . . seeking to recoup certain assets allegedly belonging to the estate." *Sears II,* 2019 WL 2234680, at *1. The record of the Chancery Court proceeding reflected as follows:

---

[3] In determining whether a Complaint fails to state a claim upon which relief may be granted, the Court "may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) (quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999)). In doing so, however, the Court "may take judicial notice of another court's opinion not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Id.* (citing *Wah Kwong*, 181 F.3d at 426) (concluding that a district court did not err by taking judicial notice of another court's opinion for an argument made by a party to that suit and for the purpose of conducting a res judicata analysis). It is in this context that the Court considers the state court opinions.

> In her Will, executed on December 15, 2008, Decedent named her son, Ian Sears, as executor. The Will provides for a special bequest of $10,000 to Ian Sears, with the remainder of the estate to be divided equally between Ian Sears and his sister, Anne A. Sears [].
>
> On May 5, 2015, Decedent executed a durable power of attorney (POA) naming Mr. Sears as her attorney-in-fact, with Ms. Sears as successor attorney-in-fact. On August 13, 2015, Decedent signed a typewritten document entitled "REVOKATION [sic] OF POWER OF ATTORNEY." This document purports to revoke the prior POA in favor of Decedent's son. Having purportedly revoked Mr. Sears' POA by execution of the revocation, [Plaintiff] thereafter, acted as Decedent's attorney-in-fact under the original POA, which named her as Decedent's successor POA. Specifically, between October 15, 2015 and November 20, 2015, [Plaintiff] transferred $116,899.51 from Decedent's Thoroughbred Financial Services investment account to Decedent's deposit account at Navy Federal Credit Union ("NFCU"). Then between November 20, 2015 and May 17, 2016, [Plaintiff] transferred $116,747.85 from Decedent's NFCU account into her own savings account. [Plaintiff] spent a substantial portion of these funds, and only $62,000 remained in her savings account at the time of trial. [Plaintiff] was unable to account for the use of these funds.
>
> Also under the POA, on April 28, 2016, [Plaintiff] prepared a quitclaim deed transferring to herself all of Decedent's "rights, title and interest" in . . . the []Boxwood Property[], with the exception of a reserved life estate for Decedent. [Plaintiff] signed her mother's name on the quitclaim deed, and signed her own name as "Attorney In Fact." The consideration recited for this conveyance is "$10.00 and 12 years of caregiving aid and assistance which amount is equal to or greater than the amount which the property would command at a fair and voluntary sale." In 2016, the tax appraisal on the Boxwood Property was $275,300.

*Sears I*, 2018 WL 3574745, at *1.

In response to Bottorff's suit, Plaintiff argued that "Decedent knowingly and intentionally transferred her assets to" Plaintiff. *Id.* Specifically, Plaintiff maintained that "the transfers were made pursuant to an agreement for caregiving services and in accordance with Decedent's POA." *Id.* at *5. This alleged agreement for caregiving services refers to "an application for veteran's benefits that [Plaintiff] completed on behalf of Decedent[,] . . . signed by Decedent in September 2015." *Id.* at *7.

Judge Joseph Woodruff presided over the Williamson County Chancery Court case. *Sears I*, 2018 WL 3574745. Following a hearing on May 12, 2017, Judge Woodruff determined that Plaintiff's "transfers were self-dealing transactions and that [Plaintiff] breached her fiduciary duty to Decedent." *Id.* at *1. Thus, on May 31, 2017, Judge Woodruff "entered a judgment against [Plaintiff] in the amount of $116,747.85 plus pre-judgment interest," and "declared the quit claim deed on the Boxwood Property to be void *ab initio*." *Id.* This judgment "vest[ed] title to the Boxwood Property in the estate." *Sears II*, 2019 WL 2234680, at *1 (footnote omitted).

Plaintiff appealed. *Sears I*, 2018 WL 3574745, at *1. The Tennessee Court of Appeals affirmed on July 25, 2018, and the Tennessee Supreme Court denied Plaintiff's application for permission to appeal on December 6, 2018. *Id.* (perm. app. denied Tenn. Dec. 6, 2018). Plaintiff filed a petition for a writ of certiorari in the United States Supreme Court, and the Supreme Court denied it on June 24, 2019. *Sears v. Bottorff*, 139 S. Ct. 2759 (2019) (Mem).

### b. Williamson County General Sessions Court

On November 13, 2017, while Plaintiff's appeal of Judge Woodruff's judgment was pending before the Tennessee Court of Appeals, Bottorff filed "a detainer summons in the general sessions court for Williamson County seeking possession of the Boxwood Property." *Sears II*, 2019 WL 2234680, at *1. "In an order entered on April 16, 2018, the general sessions court" determined that Plaintiff "had failed to obtain a stay of the chancery court's judgment, granted possession of the Boxwood Property to the estate, and ordered [Plaintiff] to vacate the premises within ten days." *Id.*

Plaintiff appealed to the Williamson County Circuit Court. *Id.* "The circuit court heard the matter on May 25, 2018, and in an order entered on June 7, 2018, granted possession of the

5

Boxwood Property to the estate." *Id.* The Circuit Court ordered Plaintiff "to vacate the property within thirty days." *Id.*

Plaintiff appealed again, this time to the Tennessee Court of Appeals. *Id.* She argued that "the general sessions court and the circuit court lacked subject matter jurisdiction in th[e] detainer action because . . . subject matter jurisdiction vested solely in [the Court of Appeals] to hear any matters related to the chancery court's decision when [Plaintiff] timely filed her notice of appeal in that case." *Id.* at *2. The Court of Appeals rejected this argument and, on May 23, 2019, affirmed. *Id.* at *3. On September 18, 2019, the Tennessee Supreme Court denied Plaintiff's application for permission to appeal. *Id.* (perm. app. denied Tenn. Sept. 18, 2019).

## 2. Federal District Court Proceedings

On September 12, 2019, Plaintiff filed this lawsuit in the Middle District of Tennessee. (Doc. No. 1.) Of the roughly 99 Defendants, the 3 most frequent targets of Plaintiff's allegations are: (1) Plaintiff's brother Ian Sears,[4] a beneficiary of their mother's estate (*id.* at 15–18, 20–28, 35, 39–48, 50–51, 53–56, 59, 62–66); (2) Administrator Bottorff, who brought the cases against Plaintiff in Williamson County on behalf of the estate (*id.* at 38–40, 42–43, 45, 47–49, 53–56, 59, 62); and (3) Williamson County Chancery Court Judge Woodruff, who determined that Plaintiff breached her fiduciary duty to her mother and conducted self-dealing transactions involving her mother's assets before she died (*id.* at 21, 38–42, 44–62, 67–68).

Plaintiff also brings this case against many other individuals and organizations she encountered throughout the state court proceedings, including: two attorneys who allegedly participated in the hearing before Judge Woodruff in some capacity (*id.* at 38–40, 47–49, 54–56, 59, 62 (Rebecca Blair and Julie Moss)); the other two Judges who presided over cases in

---

[4] Plaintiff also names as a Defendant Ian's wife, Annemarie Sears. (Doc. No. 1 at 1.)

Williamson County (*id.* at 2, 56 (General Sessions Judge Tom Taylor and Circuit Court Judge James G. Martin III)); every member of the Tennessee Court of Appeals and Supreme Court (*id.* at 1–2, 37–38, 49, 55–62); two state court staff members (*id.* at 37–38, 49, 54–56, 59, 62 (Elaine Beeler and James Hivner)); one unnamed group of Williamson County Court staff members (*id.* at 3 ("unnamed Officers of the Williamson [County] Court Services")); and the Bar Associations of Williamson County and the State of Tennessee (*id.* at 38, 47–49, 55, 62), along with six of their members (*id.* at 5).

Another large group of Defendants is comprised of organizations and individuals allegedly involved in the medical care of Plaintiff's mother before her death. The organizations include the Frist Clinic (*id.* at 6), Radiology Alliance (*id.*), and one collective Defendant identified as "HCA Health Services of TN Inc., dba Tristar Centennial Medical Center, Tristar Health Systems, Inc. dba Sarah Cannon Cancer Center, TriStar Centennial Parthenon Pavilion" (*id.*). The individuals include "all other doctors, nurses and others named and unnamed who attended Sally F. Sears during her stay at the Parthenon Pavilion, Medical Center and Sarah Cannon at the facilities collectively and individually, contract, associated, and or employed." (*Id.* at 2.) To that end, Plaintiff names 44 individual doctors as Defendants. (*Id.* at 2–3.)

The final category of Defendants covers law enforcement in Williamson County and the City of Franklin. Plaintiff alleges that she interacted with these Defendants in various capacities both before and after her mother's death. These Defendants include: the Williamson County Sheriff's Department and eight of its Officials (*id.* at 3); the Franklin Police Department and three of its Officials (*id.*); and the District Attorney's Office and two of its Officials (*id.*).

B. **Discussion**

This case is subject to dismissal for at least three reasons: it is barred by the *Rooker-Feldman* doctrine, Plaintiff's claims are barred by the doctrine of res judicata, and Plaintiff fails to state a claim for relief under the sole federal statute upon which she asserts the existence of subject-matter jurisdiction. The Court will address each of these rationales for dismissal in turn.

1. **Rooker-Feldman**

As held by the United States Supreme Court, the "*Rooker-Feldman* doctrine" is a narrow principle of law by which federal district courts must not consider "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (discussing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). A complaint that "essentially invite[s] federal courts of first instance to review and reverse unfavorable state-court judgments" should be "dismissed for want of subject-matter jurisdiction." *Id.* at 283–84 That is because "appellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in" the United States Supreme Court—not a federal district court. *Id.* at 283 (citations omitted).

Here, the explicit aim of the Complaint is to challenge judgments issued by the Williamson County Chancery Court, the Williamson County General Sessions Court, and the Williamson County Circuit Court ("the State Court Judgments"), all of which were appealed and upheld by the appellate courts. To briefly recap, the Chancery Court found that Plaintiff improperly transferred to herself nearly $400,000 of her mother's assets in the final year of her mother's life, including $116,899.51 in cash and interest in the Boxwood Property valued at

$275,300. The Chancery Court therefore entered a judgment against Plaintiff for about that amount of cash and vested title to the Boxwood Property in the estate. The judgments of the General Sessions Court and the Circuit Court later granted possession of the Boxwood Property to the estate.

Plaintiff appealed the State Court Judgments through the state court system, as she was entitled to do. She also pursued the appeal of the Chancery Court judgment to the United States Supreme Court, which, as that Court has explained, is the exclusive federal forum for review of state court judgments. As she reached the conclusion of her state appeals regarding the judgments of the General Sessions and Circuit Court, however, she filed a Complaint in this Court. And through this Complaint, Plaintiff seeks an injunction barring the enforcement of the State Court Judgments and the state court orders imposing costs on Plaintiff as a consequence of the state court litigation. (Doc. No. 1 at 67–68.)

"The pertinent question in determining whether a federal district court is precluded under the *Rooker-Feldman* doctrine from exercising subject-matter jurisdiction over a claim 'is whether the "source of the injury" upon which plaintiff bases his [or her] federal claim is the state court judgment.'" *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009) (quoting *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008)). Here, given that Plaintiff's primary focus is on enjoining enforcement of the State Court Judgments, it is clear that those judgments are the "source of the injury" upon which Plaintiff bases her federal claims, regardless of the form in which Plaintiff presents them. *See Lawrence*, 531 F.3d at 370–71 (collecting cases) ("[C]laims seeking injunctive relief are barred by *Rooker-Feldman* if they necessarily require the federal court to determine that a state court judgment was erroneously entered."). Thus, to the extent that

9

the Complaint is substantively premised on the notion that the State Court Judgments are invalid, this Court, under *Rooker-Feldman*, has no subject matter jurisdiction to consider those claims.

## 2. Res Judicata

The Court recognizes that there is a distinction "between plaintiffs who bring an impermissible attack on a state court judgment—situations in which *Rooker-Feldman* applies—and plaintiffs who assert independent claims before the district court—situations in which *Rooker-Feldman* does not apply." *Lawrence*, 531 F.3d at 368 (quoting *Pittman v. Cuyahoga Cty. Dep't of Children and Family Serv.*, 241 F. App'x 285, 287 (6th Cir. 2007)). If a plaintiff alleges that "certain defendants committed fraud or misrepresentation in the course" of state court proceedings, for example, then the plaintiff may be presenting an independent claim that is not barred by *Rooker-Feldman*. *Id.* at 369 (discussing *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006)).

Here, Plaintiff alleges improper behavior by Ian Sears, Administrator Bottorff, and Judge Woodruff during the course of the proceedings in Williamson County Chancery Court. In general, Plaintiff alleges that Ian repeatedly lied under oath (*see* Doc. No. 1 at 21–24, 27), Bottorff improperly introduced evidence during the hearing (*id.* at 38) and "acted in concert with [Ian] in the commission of perjury" (*id.* at 47), and Judge Woodruff presided in a manner that was hostile and biased against Plaintiff (*id.* at 38–42, 44–56, 59). To the extent that these allegations raise independent claims, bringing Plaintiff's claims outside the scope of the *Rooker-Feldman* doctrine, this Court does have subject-matter jurisdiction to address those claims, and state law determines whether the defendants will prevail under principles of preclusion. *McCormick*, 451 F.3d at 392–93 (quoting *Exxon Mobil*, 544 U.S. at 293).

Although res judicata is "an affirmative defense that should be raised by the defending party" as a matter of "both federal and Tennessee law," *Hutcherson v. Lauderdale Cty., Tenn.*, 326 F.3d 747, 757 (6th Cir. 2003) (citations omitted), "a court may take the initiative to assert the res judicata defense sua sponte in 'special circumstances.'" *Id.* (quoting *Arizona v. California*, 530 U.S. 392, 412 (2000)). "Raising res judicata sua sponte in appropriate cases, 'insures the finality of decisions, conserves judicial resources, and protects litigants from multiple lawsuits.'" *Hanger Prosthetics & Orthotics E., Inc. v. Henson*, 299 F. App'x 547, 553–54 (6th Cir. 2008) (quoting *McClain v. Apodaca*, 793 F.2d 1031, 1032 (9th Cir. 1986)). Given the fact that the Court is conducting its initial review and no Defendant has been served with this Complaint, the Court concludes that raising the issue of res judicata sua sponte fits within those "special circumstances" here. *See Wylie-Brown v. O'Leary*, No. 1:18-CV-292, 2018 WL 3135942, at *3 (N.D. Ohio June 27, 2018) (raising the issue of res judicata sua sponte where a plaintiff filed suit in federal district court challenging state court eviction proceedings).

"The Full Faith and Credit Act, 28 U.S.C. § 1738, . . . requires the federal court to 'give the same preclusive effect to a state-court judgment as another court of that State would give.'" *Exxon Mobil*, 544 U.S. at 293 (citations omitted). Thus, "[r]es judicata requires that this Court give the same effect to the Tennessee state court judgment[s] as would be afforded by another Tennessee state court." *Henson*, 299 F. App'x at 554 (citing 28 U.S.C. § 1738 and *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985)).

"Tennessee courts have used the term 'res judicata' to include both claim preclusion (res judicata) and issue preclusion (collateral estoppel)." *West v. Parker*, 783 F. App'x 506, 512 n.2 (6th Cir. 2019) (citing *Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 393 (Tenn. Ct.

App. 2009)). And "[w]hen § 1738 applies to a state court decision, both issue preclusion and claim preclusion apply." *Lumbard v. City of Ann Arbor*, 913 F.3d 585, 590 (6th Cir. 2019).

In Tennessee, claim preclusion "bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit." *West*, 783 F. App'x at 512 (footnote omitted) (quoting *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995)). There are four elements to establish claim preclusion under Tennessee law: "(1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits." *Id.* (quoting *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012)).

Issue preclusion, meanwhile, "generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." *Henson*, 299 F. App'x at 554 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001)). In Tennessee, issue preclusion applies where the issue in question is "(1) identical to an issue decided in an earlier proceeding that was actually raised, litigated, and decided on the merits; (2) the judgment in the earlier proceeding has become final; (3) the party against whom issue preclusion is asserted was a party or in privity with a party to the earlier proceeding; and (4) the party against whom issue preclusion is asserted had a full and fair opportunity in the earlier proceeding to contest the issue." *West*, 783 F. App'x at 512 n.2 (citing *Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 107 (Tenn. 2016)).

Here, the publicly available Tennessee Court of Appeals opinions reflect that the state courts have already found Plaintiff to have no legal right to the relief she seeks through this lawsuit. This includes interest in and possession of the Boxwood Property. And while Ian Sears was not a party to the Chancery Court action, he was a beneficiary of the estate. *Sears I*, 2018 WL 3574745, at *5. Thus, for res judicata purposes, Ian was in privity with Bottorff, the Administrator of the estate. *See Goza v. SunTrust Bank*, No. W2014-00635-COA-R3-CV, 2015 WL 4481267, at *6 (Tenn. Ct. App. July 22, 2015) (finding that an estate's beneficiaries were in privity with the estate's administrator for res judicata purposes). The state courts also had jurisdiction, and the judgments at issue are final. Plaintiff's allegations that Ian gave false testimony during the Chancery Court proceedings are therefore barred by the doctrine of res judicata.

In the Complaint currently before the Court, Plaintiff also alleges that Ian acted maliciously towards their mother during the final year of her life in various ways. This includes making medical decisions harmful to their mother's health, taking some of their mother's belongings from the Boxwood Property, and leaving the Boxwood Property a less clean and comfortable place to live. (*See* Doc. No. 1 at 16–18, 20–28, 35, 42–43, 51.) But on appeal of the Chancery Court case, Plaintiff argued that Ian had "unclean hands" because he "ransacked Decedent's home and made the decision to withhold medical treatment that would have prolonged Decedent's life." *Sears I*, 2018 WL 3574745, at *5. And the Tennessee Court of Appeals rejected this argument, noting that the record was "void of any pleading, wherein [Plaintiff] made an actual claim against Mr. Sears or moved to join him as a party to the litigation." *Id.* In other words, these were issues that Plaintiff could have litigated in the Chancery Court case, but did not. Accordingly, these claims are also barred by res judicata. *See*

13

*Gerber v. Holcomb*, 219 S.W.3d 914, 918 (Tenn. Ct. App. 2006) ("The doctrine of res judicata only requires that there be 'a full and fair *opportunity* to litigate all issues arising out of' the claim, *W.G. Myers v. Olson*, 100 N.M. 745, 676 P.2d 822, 824 (1984) (emphasis added), however, every applicable issue need not be actually litigated in order for res judicata to apply.")

As to Judge Woodruff's alleged bias during the Chancery Court proceedings, Plaintiff specifically raised this issue on appeal. The Tennessee Court of Appeals noted that Plaintiff waived this issue by failing to raise it at the hearing, but nonetheless addressed the substance of Plaintiff's allegations as follows:

> [Plaintiff] alleges that the trial court treated [her] in a manner that was "biased, highly prejudicial and intended to humiliate and silence her from offering a defense." . . . [O]ur review indicates that the trial court provided [Plaintiff] with ample opportunity to present her proof in this matter, and that her due process rights were not, in fact, violated. Furthermore, the transcript reveals that [Plaintiff] interrupted the trial court continuously throughout the hearing and that the trial court gave [Plaintiff] multiple warnings not to interrupt before having [Plaintiff] escorted to a holding cell for a brief recess. Trial courts possess inherent, common-law authority to control their dockets and the proceedings in their courts. *Hodges v. Attorney Gen.*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000). "[T]he trial judge . . . is ultimately responsible for every aspect of the orchestration of a trial." *State v. Milam*, No. M2008-00695-CCA-R3-CD, 2010 WL 744398, at *18 (Tenn. Crim. App. Mar. 3, 2010) (quoting *State v. McCray*, 614 S.W.2d 90, 93 (Tenn. Crim. App. 1981)). The record simply does not support [Plaintiff]'s contention that the trial court behaved in a manner that was "biased, highly prejudicial and intended to humiliate and silence her from offering a defense." This claim is without merit.

*Sears I*, 2018 WL 3574745, at *5. These claims, too, are thus barred by the doctrine res judicata.

For all of these reasons, Plaintiff's claims against all individual Defendants involved in the state court proceedings (including Ian, Bottorff, the state court judges, attorneys who participated in the state court proceedings, and the state court staff members), to the extent they are not barred by *Rooker-Feldman* doctrine, are nonetheless barred by the doctrine of res

judicata. All claims that arose or could have arisen in the state court litigation at issue herein are barred by res judicata and collateral estoppel and should be dismissed.

### 3. Failure to State a Claim

Plaintiff's sole asserted basis for this Court's (federal question) jurisdiction is the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (Doc. No. 1 at 10). Plaintiff has sued some Defendants for RICO violations who do not appear to have been involved in the state court proceedings. For example, she has sued numerous medical professionals and organizations and certain law enforcement officers and groups ("the Medical and Law Enforcement Defendants").[5] With regard to these Defendants, who would not be covered by the *Rooker-Feldman* or res judicata principles, the Court finds that Plaintiff has failed to state a claim for Civil RICO against them.

To withstand scrutiny under 28 U.S.C. § 1915(e)(2)(B)(ii), a complaint filed *in forma pauperis* "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

---

[5] Plaintiff alleges that the Bar Association Defendants were witness to Defendant Woodruff's alleged "criminal conduct" and did not object, thereby becoming co-conspirators with him. (Doc. No. 1 at ¶¶ 300-301).

15

To state a civil RICO claim under 18 U.S.C. § 1962(c), which is the only theory of RICO liability the Complaint implicates in any way,[6] Plaintiff "must plead the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)). The Court finds that Plaintiff has failed to sufficiently allege these elements.

As to the first element, Plaintiff "must set forth allegations to establish that the defendant conducted or participated, 'directly or indirectly, in the conduct of [the RICO] enterprise's affairs.'" *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 791–92 (6th Cir. 2012) (quoting 18 U.S.C. § 1962(c)). Regarding many of the Medical and Law Enforcement Defendants, Plaintiff does not allege any conduct or participation whatsoever. For instance, Plaintiff does not allege any participation or conduct by 40 of the 44 named individual doctor Defendants. (*See* Doc. No. 1 at 30–32, 35–37 (mentioning Drs. Heusinkveld, Barrett,[7] Avenido, and Rose by name)).

As for the second element, every RICO claim requires proving that the defendants engaged in a pattern of racketeering through the operation of some kind of "enterprise." *Columbia Park East MHP, LLC v. U.S. Bank Nat'l Ass'n*, 766 F. App'x 271, 273 (6th Cir. 2019). Plaintiff provides conclusory allegations referring to some purported "RICO enterprise" but has

---

[6] In addition to this theory under 18 U.S.C. § 1962(c), there two alternate theories of liability under RICO, one set forth in Section 1962(a) and one set forth in Section 1962(b). But experience shows that neither of these two theories is pled often, and Plaintiff made no attempt to plead either of them.

[7] The Court notes Plaintiff's allegation that Dr. Barrett "knowingly and intentionally brought about mother's death by adding potassium to her saline" (Doc. No. 1 at 37), and disregards it as pure speculation, factually frivolous and implausible. *See Hill*, 630 F.3d at 473 (disregarding a pro se prisoner's allegation that prison staff would "have him assaulted and possibly killed").

not actually identified the enterprise itself. She has not identified an "individual, partnership, corporation, association, or other legal entity, [or] union or group of individuals associated in fact though not a legal entity" whose affairs were conducted by Defendants through an alleged pattern of racketeering activity. 18 U.S.C. § 1961(c)(4).

In addition to referring to Ian Sears' alleged "RICO enterprise to bring about an early inheritance through the murder of [their] mother," Plaintiff alleges that "each organization within the network [Ian] has accessed, has its own RICO objectives, predicate crimes and enterprise." (Doc. No. 1 at 11.) She never identifies the enterprises, however—either by specifying a legal entity or by describing an association-in-fact. Absent this most basic allegation for a civil RICO claim, her claim fails.

Racketeering activity under the statute includes numerous predicate acts of criminal activity. 18 U.S.C. § 1961(1). Plaintiff makes repeated conclusory allegations listing "predicate acts" allegedly committed by the Defendants, perhaps the most comprehensive of which is as follows:

> The predicate RICO acts committed by the defendants as actors, conspirators, or accessories after the fact, include but are not limited to, Murder, attempted Murder, kidnapping, false imprisonment, embezzlement, elder abuse, perjury, mail fraud, wire fraud, Medicare fraud, insurance fraud, theft, extortion, slavery, denial of civil liberties, obstruction of justice, official misconduct, official oppression and misuse of official information.

(Doc. No. 1 at 13.) The body of the Complaint, however, lacks the factual allegations necessary to support these asserted legal conclusions. In short, the laundry list of wide-ranging crimes Plaintiff alleges Defendants have committed is conclusory and unsupported by specific plausible factual allegations supporting a claim for any of the predicate offenses. *See Givens v. Loeffler*, No. 2:19-cv-617, 2019 WL 1767340, at *6 (S.D. Ohio Apr. 22, 2019) (recommending dismissal of civil RICO claim).

Accordingly, this case is subject to dismissal as to all Defendants (including those not involved in the state court proceedings) because Plaintiff fails to state a claim upon which relief may be granted under RICO. The federal claims being dismissed, the Court declines to exercise supplemental jurisdiction over any state law claims in the Complaint. *See Moon*, 465 F.3d at 728 (citations omitted) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims."); 28 U.S.C. 1367(c).

## III. Motion for Expedited Review and Temporary Restraining Order

Plaintiff seeks a temporary restraining order because she received an eviction notice from the Williamson County Sheriff's Department telling her to vacate the Boxwood Property. (Doc. No. 8 at 2.) Plaintiff requests that this Court enjoin enforcement of this eviction notice, in addition to a range of other injunctive relief. (*Id.* at 4–5.)

The Court considers four factors to determine whether to issue a temporary restraining order: "(1) whether [Plaintiff] has demonstrated a strong likelihood of success on the merits, (2) whether [Plaintiff] will suffer irreparable injury in the absence of [an order], (3) whether [issuing the order] will cause substantial harm to others, and (4) whether the public interest is best served by [issuing the order]." *Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007) (citing *N.E. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)). Here, for the reasons set forth above supporting dismissal of this case, the Court concludes that Plaintiff cannot demonstrate a strong likelihood of success on the merits. Plaintiff's request for a temporary restraining order will be denied.

## IV. Motion for Leave to Use the Court's Electronic Filing System

Finally, Plaintiff requests to file documents electronically through this Court's Electronic Case Filing ("ECF") system. (Doc. No. 10.) The Court has discretion to authorize a *pro se* party

to use ECF on a case-by-case basis. *See* Administrative Order No. 167-1 (incorporating M.D. Tenn. Amended Pracs. & Procs. for Elec. Case Filing, § 7 (Aug. 21, 2015)). Here, however, Plaintiff does not state that she has attended an ECF training class approved by this Court, and the Court has determined that this case is subject to dismissal. Accordingly, Plaintiff's request to use ECF will be denied.

**V.     Conclusion**

For all of these reasons, Plaintiff's application to proceed as a pauper (Doc. No. 2) is **GRANTED**, her motions for a temporary restraining order (Doc. No. 8) and permission to use ECF (Doc. No. 10) are **DENIED**, and this case is **DISMISSED.**

Dismissal of this case for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine is without prejudice, as is the dismissal of any state law claims in the Complaint over which the Court declined to exercise supplemental jurisdiction. In all other respects, this dismissal is with prejudice.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE